### BENSON v. ADAMS.   (No. 8671.)

(Court of Civil Appeals of Texas. Galveston. May 5, 1925. Rehearing Denied June 4, 1925.)

1. **Alteration of instruments ⬅6—No material change made in note by changing place of payment to agree with terms of contemporaneous mortgage.**

No material change was made in written agreement, consisting of notes and mortgage, executed contemporaneously by a change in place of payment of one of notes without consent of maker, where note, when construed with recitals in mortgage, showed that intention of parties was that note was to be payable at place where by change payment was directed to be made.

2. **Contracts ⬅164 — Two or more instruments in writing, executed contemporaneously, are to be taken as parts of same contract.**

Two or more instruments in writing, executed at same time by same parties, all referring to same matter, are to be taken as parts of same contract and forming one entire agreement.

3. **Contracts ⬅147(1)—Contract read in accordance with intention and understanding of parties.**

A contract must be read in accordance with intention and understanding of parties, and a party will be held to that meaning which he knew other party to contract understood contract to mean.

4. **Alteration of instruments ⬅2—Change in instrument which does not alter its identity or legal effect is not a material change.**

Generally, a change in an instrument which does not alter its identity or legal effect is not a material change.

5. **Alteration of instruments ⬅29—Evidence held not to show that changing place of payment in note was done by payee with fraudulent intent.**

Evidence *held* not to show that changing of place of payment of note was done by payee with fraudulent intent.

6. **Alteration of instruments ⬅23—Alteration of note without fraudulent intent will not prevent holder from recovering on original consideration.**

When a note, evidencing an original indebtedness, is altered after its execution by holder without fraudulent intent in such manner as to render it invalid, such holder may, under appropriate pleading, recover on original consideration.

7. **Judgment ⬅255—Judgment in suit on notes and in alternative on original indebtedness might be supported on proof of original indebtedness.**

In suit on purchase-money note for goods sold defendant and secured by chattel mortgage, and in alternative on original indebtedness, judgment for plaintiff *held* supported by proof of original indebtedness as well as note, where amount of original indebtedness was shown, and that note evidenced that defendant owed sum due for such indebtedness.

8. **Limitation of actions ⬅25(10)—Four-year statute of limitation applicable, where original indebtedness evidenced by written mortgage and notes.**

Where original indebtedness for goods sold defendant was evidenced by written mortgage as well as by note, four-year statute of limitation was applicable, and not two-year statute.

9. **Limitation of actions ⬅48(7)—Suit on note for goods sold defendant and secured by chattel mortgage held not barred by limitation.**

Suit on purchase-money note for goods sold defendant and secured by a chattel mortgage *held* not barred by limitation, where that portion of original debt sued on was not due until October, 1920, and plaintiff's plea declaring in alternative on original indebtedness was filed in March, 1924.

10. **Interest ⬅35—Allowance of interest held proper, though judgment rendered on original indebtedness, where mortgage executed as part of contract expressly provided therefor.**

In suit on note for goods sold defendant, secured by chattel mortgage, and in alternative on original indebtedness, if judgment was ren-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

dered for balance due on original indebtedness instead of on note, court did not err in allowing 10 per cent. per annum interest thereon, where mortgage, executed as part of contract, expressly stipulated therefor.

**11. Sales ⊜⇒360(1)—Allowance of attorney's fees held proper, though note was void, where expressly stipulated for in mortgage.**

In suit on note for goods sold defendant and secured by chattel mortgage, court did not err in allowing plaintiff 10 per cent. attorney's fees, even if the note secured was void, where mortgage, which formed a part of contract, expressly stipulated therefor.

**12. Trial ⊜⇒352(4)—Refusal to submit issue not raised by evidence is not error.**

Refusal to submit an issue not raised by the evidence is not error.

**13. Trial ⊜⇒352(1)—Issue held sufficient to allow jury to pass on questions as to whether defendant was entitled to other credits on note not allowed by plaintiff.**

In suit on note court's issue, whether defendant was entitled to allowance of any payments or credits on note not allowed by plaintiff *held* sufficient to allow jury to pass on questions as to whether defendant was entitled to credits other than payments not allowed by plaintiff.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by the Guardian Trust Company, trustee, against Roy H. Benson and others, with cross-action by defendant James R. Adams against defendant Benson. Judgment for cross-complainant and defendant Benson appeals. Affirmed.

Stewart, De Lange & Milheiser, of Houston, for appellant.

K. C. Barkley and W. Owen Dailey, both of Houston, for appellee.

LANE, J. This suit was brought by Guardian Trust Company, trustee, against Roy H. Benson and wife, Kathleen Benson, for debt and against said parties, James R. Adams, and Dickinson State Bank to foreclose an alleged lien on certain property belonging to Roy H. Benson.

James R. Adams by cross-action sought a recovery against Roy H. Benson and a foreclosure of a certain mortgage lien. Guardian Trust Company, Dickinson State Bank, and Mrs. Benson were disposed of by judgment of which no complaint is made. It is therefore not necessary to make further mention of them herein.

The nature and result of the suit as it relates to the matters presented by this appeal may be stated as follows:

On the 5th day of January, 1920, James R. Adams sold and delivered to Roy H. Benson one tractor, certain plows, rolling coulters, row listers, and two barrels of oil, for which Benson agreed to pay him $2,132.25. On the same day, as evidence of said debt, Benson made, executed, and delivered to Adams his three promissory notes, No. 1 "for $250, No. 2 for $400, and No. 3 for $1,482.25." All of said notes were prepared by the use of printed forms used by James R. Adams while in business in Plano, Texas.

Note No. 1 reads as follows:

"$250.00.　　　　Dickinson, Texas, 1/5, 1920.

"Jan. 12th, after date, for value received, I, we, or either of us promise to pay to the order of James R. Adams, ~~at Plano~~ Texas, two hundred fifty dollars and no cents dollars, with interest at the rate of ten per cent., per annum from date until paid and ten per cent. attorney's fees of sued upon or placed in the hands of an attorney for collection. The makers, sureties, and all endorsers hereof severally waive presentment for payment and protest and consent that the time of payment may be extended without notice. If this note is not paid at maturity, all other notes held by the holder hereof against us, or either of us, may be declared due at the option of said holder.
　　"No. 1.　　　　　　　　Roy H. Benson.
　　"When due: Jan. 12th.
　　"Address: Dickinson, Texas.
　　"Witness: J. Ben Wilson."

Note No. 2 is identical in form as No. 1, with the exception that it is for $400 instead of $250, and the words "at Plano" are not erased as in No. 1.

Note No. 3 is for the sum of $1,482.25, and is otherwise identical in form as Nos. 1 and 2, with the further exception that the words "at Plano" were erased and the word "Houston" was inserted in their stead.

To secure the payment of this indebtedness evidenced by said notes R. H. Benson, on said 5th day of January, contemporaneously with the execution of the above-mentioned notes, and as a part of but one transaction, executed and delivered to James R. Adams a mortgage, the parts of which pertinent to the matters under consideration, are as follows:

"Know all men my these presents, that I, Roy H. Benson, Dickinson, Galveston county, ———; of ——— county, ——— hereinafter called grantor, in consideration of twenty-one hundred and thirty-two dollars and 25/100 ($2,132.25) lawful merchandise of the United States, loaned to the grantor upon the faith and credit of the statements herein contained, by James R. Adams, of Houston, Texas, hereinafter called the grantee, the receipt of which is hereby acknowledged, and which is further evidenced by the grantor's notes as follows: One note for $250.00, dated 1/5/1920, payable Jan. 12th after date. One note for $400.00, dated 1/5/1920, payable Jan. 30th after date. One note for $1,-482.25, dated 1/5/1920, payable Oct. 1st, after date payable at the grantee's office at Houston, Texas, and bearing ten per cent. interest per annum from date. Do by these presents bargain, sell and convey to the grantee and its assigns the following described personal property, to wit: 1 No. 15361 Wallis Cub Jr. Tractor Motor No. 14893, one J. I. Case 4 bottom; 10" Power lift plow with 4 extra shears one

2 raw J. I. Case lister; 10 head Jersey cows and increase, branded 63, all 6 to 7 years old; 8 head Jersey calves 6 to 10 months old and increase, no marks or brand, after they are one year old will be branded 63; Jersey bull registered, about 2 years and 10 months old, no marks or brand. * * *

"This conveyance is also intended to and is hereby made to secure any and all sums which may be hereafter advanced to the grantor by the grantee on any account whatever, and also any sum which may be required to be expended for the maintenance, preservation, protection, handling, marketing or shipping of the above described stock as fully as though all such advancements and expenditures were specifically described herein, any such sums shall bear interest from date advanced at the rate of ten per cent per annum.

"This conveyance is intended as a mortgage for the purpose of securing the grantee in the payment of the indebtedness described and acknowledged above, and any further advances the grantee may make hereunder, at the grantor's request or for the benefit or preservation of the property mortgaged."

The foregoing provisions are followed by the following:

" * * * And in case the holder of said note or notes shall place this mortgage or any or all of said notes in the hands of an attorney for collection, or if suit is brought thereon, or if collected through the probate court, then there shall accrue ten per cent. attorney's fees on the amount unpaid hereunder, which shall be added to the debt hereby secured. All exemption and limitation laws and any and all claims for damages for seizure or otherwise are hereby expressly waived. This mortgage shall remain in force until all of said indebtedness is paid, whether the same be evidenced by the original notes or renewals for the or any part of said amounts, and any other mortgage as additional security shall be supplemental to this, until this release is formally released."

On the 26th day of January, 1923, James R. Adams filed his cross-petition, in which he alleged the execution and delivery of said notes and mortgage by Roy H. Benson to him. He alleged that Benson had made many and sundry payments of sums to be paid upon said notes; that he had applied a sufficient amount of said sums so paid to discharge and satisfy notes Nos. 1 and 2, and has applied the remainder thereof as a credit upon note No. 3; that, after having so applied such remainder, there still remained unpaid on said note No. 3 the sum of $1,121.81. He prayed for a recovery of said balance unpaid on said note No. 3 for attorneys' fees as provided in said note, etc., and for a foreclosure of his mortgage lien.

On the 8th day of March 1924, Adams filed his amended petition in lieu of his original petition, and therein again alleged the execution, etc., of said notes and mortgage. He repeated his allegation of the payment of notes Nos. 1 and 2, and then alleged that there had been payments made by Benson on note No. 3, but there remained unpaid thereon the sum of $638.64, with interest on same at the rate of 10 per cent. from the 24th day of July, 1923. He also alleged and prayed for attorneys' fees provided for in said note, and for a foreclosure of his mortgage lien.

On the 10th day of March, 1924, Roy H. Benson filed his original answer, denying generally the allegations of Adams, and, under oath, denied that he executed the note sued on, in that said note had been fraudulently mutilated and materially altered since the same was executed and delivered by Adams, in that the place of payment as stated in said note, to wit, "at Plano" had been erased by Adams, and by him the word "Houston" had been inserted in its stead. Benson also alleged that he had paid Adams several sums of money and redelivered to him certain property in full payment and discharge of said note; that Adams had agreed to accept said sums of money and property in payment of said note. Benson also pleaded the two and four-year statutes of limitation in bar of Adams' recovery, and also pleaded usury to the note.

On the 12th day of March, 1924, Adams filed his supplemental petition containing a general demurrer and general denial of the allegations, of Benson's answer, and therein specially denied that the note sued on had been mutilated or materially altered since its execution and delivery, or that any act had been done fraudulently relative thereto; alleged that all of said notes, Nos. 1, 2, and 3, were originally printed payable at Plano, Tex.; that neither of the parties were living at Plano at the time of the execution of said notes, and that it was not contemplated that any of said notes should be made payable at Plano; that it was the intention of both parties that the notes should be made payable at Houston, Tex., as he, Adams, was transacting all his business in Houston at the time said notes were executed; and that the mortgage sued on described the notes as being payable at Houston, Tex. He alleged, if there had been any alteration in the note sued on after its execution, such alteration was made in accordance with the terms of the agreement entered into with reference to the payment of said notes, which is evidenced by the terms of the mortgage entered into at the time of, and contemporaneously with the making of said notes.

Adams also alleged that he sold and delivered to Benson certain goods, wares, and merchandise of the reasonable value of $2,132.25, which said sum Benson agreed to pay him for said merchandise; that Benson had paid all of said sum except $638.64 and the interest due thereon from the 24th day of July, 1923, which said sum he now refuses to pay; that Benson, on or about the 1st day of May, 1923, renewed, in writing, his promise to pay the balance due and unpaid interest for said merchandise; and that Benson gave him a chattel mortgage on the property described

therein to secure the payment of the purchase price of said merchandise. He prayed in the alternative, substantially, that, if it should be held that the note sued upon had been altered in such manner as to render it nonenforceable, then that he should be awarded judgment for balance due of the purchase price of the merchandise sold for the sums prayed for in his first amended petition.

Defendants Benson and wife filed first supplemental answer March 12, 1924, consisting of general demurrer and special exceptions, general denial of all facts set forth in the first supplemental petition, and specially denying that any promise or statement as alleged in plaintiffs' supplemental petition was made by the defendants, or either of them, or by their authority, and alleging that the indebtedness described in the supplemental petition had been fully paid, and pleading the two and four year statutes of limitation thereto; this pleading being sworn to by the defendant Roy H. Benson.

The trial was before a jury on special issues, said issues, together with the answers of the jury, being as follows:

"(1) Was the note sued on made payable in Houston, according to its terms, before it was signed, or was the word 'Houston' written in afterwards? Answer 'Before' or 'After,' as you may determine from the evidence. Answer: 'After.'

"(2) Is the defendant Roy H. Benson entitled to allowance of any payments or credits on the note not allowed by plaintiff? Answer 'Yes' or 'No.'

Answer: 'No.'

"(3) If you say he was entitled to allowance for payments or other credits other than those allowed, then state the amount shown by the evidence. Answer in dollars and cents. No answer.

"(4) What was the amount or price agreed to be paid by the defendant Roy H. Benson for the articles received by him on January 5, 1920? Answer: '$2,132.25.'

"(5) What is the balance due thereon at this time? Answer: $638.64.'

"(6) Did defendant Roy H. Benson ratify or consent to change of note No. 3, if you find it was changed, after knowledge of said change? Answer: 'No.' "

The defendants requested the court to submit to the jury their special charges Nos. 2 and 3, as follows; both of which were refused:

"(2) Was the note No. 3 in the sum of $1,482 altered by insertion of the word 'Houston' after execution and delivery of said note and without the consent of Roy H. Benson?

"(3) Was the note No. 3 in the sum of $1,482 altered by insertion of the word 'Houston' after execution and delivery of said note?"

The record shows that the court gave to the jury charges requested by defendants as follows:

"(15) If you have answered the foregoing issue No. 2 or 3 in the affirmative, then answer: Was such alteration willfully made? Answer 'Yes' or 'No,' as you find the fact to be.

"(16) If you have answered issue No. 2 or 3 in the affirmative, then answer: Did plaintiff, James R. Adams, at the time he altered said note, know that he had no authority to make alterations? Answer 'Yes' or 'No,' as you find the fact to be.

"(17) Were the goods described in paragraph 3 of defendant's first amended answer delivered by defendant and accepted by plaintiff under agreement that defendant should be credited with one-half of list selling price, at Houston, Tex., of new articles of same grade and character?

"If you have answered the foregoing issue No. 17 in the affirmative, then answer: What was the total list selling price at Houston, Tex., of each of said articles?"

The answers of the jury to such questions, if made, are not disclosed by the record, nor is there anything in the record showing that defendants made any complaint of the failure of the jury to answer same.

Upon the answers of the jury as above shown, and the evidence, the court rendered judgment in favor of the plaintiff, Adams, against Roy H. Benson for the sum of $638.64, with 10 per cent. per annum interest thereon from its date until paid, together with $63.86 as attorneys' fees, to bear interest at the rate of 6 per cent. Judgment was also rendered foreclosing the mortgage lien of Adams as prayed for. From the judgment so rendered, Roy H. Benson has appealed.

Appellants present propositions Nos. 1 to 9, inclusive, as germane to their assignments Nos. 1 to 14, inclusive, and Nos. 18, 19, 20, 21, 22, and 26. These propositions reduced to their ultimate are, first, that the undisputed evidence shows, and the jury found, that the note sued on was by the plaintiff materially altered after it was signed by the maker by changing the place of payment thereon without the consent or ratification of the maker; that by reason of such material alteration said note was rendered void and unenforceable against the maker, and therefore the court erred in not so holding and in not rendering judgment for appellants; and, second, that the plaintiff is not entitled to a recovery upon the original indebtedness, because (1) there was no pleading seeking a recovery upon the original obligation nor upon the chattel mortgage; and (2) because the plaintiff's cause of action upon the original obligation or indebtedness as pleaded was barred by the statutes of limitation of two and four years.

We shall dispose of the contentions presented by the propositions in the order named.

[1-3] We have reached the conclusion that the judgment of the trial court may be sustained upon either one of the two theories:

First, we find that the notes and mortgage in question were executed contemporaneously by Benson, and that, when taken together, they evidenced the actual contract and agreement of the parties, and that no material al-

teration was made in the written agreement, as a whole. A change in one of the two instruments, that is, the mortgage or the note, would not be material where by the terms of the other such change is authorized. It is well settled by the uniform holdings of our courts that two or more instruments in writing, executed at the same time between the parties, all referring to the same matter, are to be taken as parts of the same contract and forming one entire agreement. Whitby v. Duffy, 135 Pa. 620, 19 A. 1065; Hamilton v. Rathbone, 175 U. S. 414, 20 S. Ct. 155, 44 L. Ed. 219; Dicken v. Cruse (Tex. Civ. App.) 176 S. W. 655; Vinson v. W. T. Carter & Bro. (Tex. Civ. App.) 161 S. W. 49; Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37; Howard v. Davis, 6 Tex. 180; Wallis v. Beauchamp, 15 Tex. 306; Warren v. Osborne (Tex. Civ. App.) 97 S. W. 851; Wilson v. Weis, 63 Tex. Civ. App. 255, 132 S. W. 841; Lawton v. Nesbit (Tex. Civ. App.) 206 S. W. 227; Beckham v. Scott (Tex. Civ. App.) 142 S. W. 80.

A contract must be read in accordance with the intention and understanding of the parties, and a party will be held to that meaning which he knew the other party to the contract understood the contract to mean. While the place of payment is specified in the note sued on as "at Plano," it is clear that, when the note is taken and construed with the recitals in the mortgage, it was the intention of the parties that the note was to be payable at Houston, Tex. The contract, as a whole, evidenced the promise to pay the note at Houston, Tex. Benson had the mortgage before him as well as the notes when he signed them, and knew that the mortgage in express terms provided for the payment of the notes at Houston. There was no material change in the contract when read as a whole, and therefore the court did not err in so holding.

[4] In 2 Corpus Juris, at page 1197, it is stated that, as a general rule, a change in an instrument which in no manner alters its identity or legal effect is not a material change, as where such change makes the instrument conform with itself, and where it supplies nothing further than that which would be implied without it.

[5, 6] Second, we find that there was no evidence tending to show that the erasure of the words, "at Plano," and the writing of the word "Houston" in their stead in the note sued on, was done by Adams with fraudulent intent, unless it be the mere fact that such alteration was made after the execution of the note by Benson. To the contrary, we think, when the evidence as a whole is viewed from the surrounding circumstances and the relations of the parties, it excludes any thought that such alteration was made with fraudulent intent. It does not, we think, raise the issue as to whether Adams made such alteration with fraudulent intent. It is shown that Adams had, at the time of the transaction between him and Benson, removed from Plano, Tex., where he formerly did business to Houston, some 200 or more miles from Plano; that Benson lived at Dickinson in Galveston county, more than 200 miles from Plano; and that it could not have been to Benson's advantage or interest to have the notes made payable in Plano instead of at Houston. We do not think the contention that the alteration made in the note was made with fraudulent intent is tenable. This view is strongly supported by the fact that the mortgage executed by Benson, contemporaneously with the execution of the notes, declares that the notes were payable in Houston. It is well settled that, when a note executed and delivered by one to another, evidencing an original indebtedness, is altered after its execution by its holder, without fraudulent intent in such manner as to render it invalid, such holder may under appropriate pleadings recover upon the original consideration or indebtedness, which is in the present case evidenced by the written mortgage pleaded by the plaintiff. Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56; Baldwin v. Bank, 104 Tex. 122, 133 S. W. 864, 134 S. W. 1178; Caldwell v. Bank ((Tex. Civ. App.) 188 S. W. 507, 2 Corpus Juris, 1181, § 15.

The plaintiff in the present case, by his supplemental petition, which was by all parties in the trial of the case treated as a proper plea, declaring, in the alternative, upon the original indebtedness, alleged as follows:

"Should it be adjudged that the said note has been materially and fraudulently altered, contrary to the intention of the parties, then plaintiff alleges that he sold and delivered to the defendant 1 Wallis tractor, 8 10″ Case plows; 4 12″ rolling coulters complete; (1 2-row lister; 2 barrels oil, of the reasonable value of $2,132.-25, which amount the defendant agreed to pay, and that he has agreed to pay all except the sum of $638.64 thereon, with interest from the 24th day of July, 1923, which amount he refuses to pay or any part thereof, and that the defendant, on or about the 1st day of May, 1923, renewed his promise in writing to pay therefor, and, further, that the defendant gave to plaintiff a chattel mortgage to secure the payment thereof upon the aforementioned property and upon 10 head jersey cows and increase branded 63, all 6 to 7 years old; 8 head jersey calves 6 to 10 months old and increase, no marks or brand after they are one year old will brand 63; 1 jersey bull registered, about 2 years and 10 months old, no marks or brand, to secure the payment of said indebtedness.

"Wherefore, premises considered, plaintiff prays that he have judgment as he has heretofore prayed for in his first amended petition."

The amount of the original indebtedness was shown, and it was shown that the notes executed by Benson were to evidence that he owed the sum due for said indebtedness. The sums paid upon the indebtedness and the balance due thereon were also shown.

[7] Under the facts and circumstances stat-

ed, we see no reason why the judgment is not supported upon proof of the original indebtedness as well as upon the note sued upon.

[8, 9] The original indebtedness is evidenced by the written mortgage as well as by the notes, and the four years statute of limitation is applicable to it, and not the two-year statute, and, since it was shown that that portion of the original debt sued on was not due until October, 1920, and that plaintiff's plea declaring in the alternative on the original indebtedness was filed in March, 1924, four years had not elapsed between said dates, and hence said cause of action was not barred by either the two or four year statutes of limitation.

By his tenth proposition, purporting to be germane to assignments Nos. 19, 20, 21, 27, 28, 31, and 32, appellant insists that the court erred in refusing to submit to the jury the question as to whether Adams had agreed to accept the tractor and other machinery delivered by Benson to him in full satisfaction of the remainder of the indebtedness due Adams.'

We have examined all of the assignments mentioned, and it is not asserted in any of them or elsewhere in the entire record, except in Benson's answer, that Adams had agreed to accept the articles returned to him in full satisfaction of the balance due him, nor is there any evidence to support such contention. We therefore overrule the proposition making such contention.

[10] We do not think that, if it be conceded that the judgment was rendered for the balance due upon the original indebtedness instead of upon the note the court erred in allowing 10 per cent. per annum interest thereon. The mortgage executed as a part of the contract of the parties expressly declares that such indebtedness shall bear such interest. We therefore overrule the contentions of appellant that the court erred in allowing such interest.

[11] We also overrule appellant's contention that the court erred in allowing appellee 10 per cent. as attorney's fees, in that there was no agreement outside of the note, which is void, pleaded, or proven, that appellant agreed to pay such attorneys' fees. It is expressly stipulated in the mortgage, which forms a part of the contract between the parties, that, if suit is brought to collect such indebtedness after maturity thereof, 10 per cent. was to be paid by the maker as attorneys' fees.

[12, 13] The issue of usury was not raised by any evidence. We therefore overrule appellant's complaint that the court refused to submit such issue to the jury. We also overrule appellant's contention that the court erred in refusing to submit to the jury issues, other than as submitted, with reference to payments made by appellant, as claimed by him. Such complaint being that the issue with reference to payments made, as presented by the court, gave the jury no chance to pass on the questions as to whether appellant was entitled to other credits not allowed by appellee, the question submitted by the court was: "Is the defendant Roy H. Benson entitled to allowance of any payments or credits on the note not allowed by plaintiff?" We think the charge was sufficient.

For the reasons expressed the judgment is affirmed.

Affirmed.