WADSWORTH v. POWELL et ux.
(No. 7284.)

(Court of Civil Appeals of Texas. Galveston. Dec. 22, 1916.)

1. HOMESTEAD ⟨⟩110 — LIENS — CONSTITUTIONAL PROVISIONS.
   Under Const. art. 16, § 50, providing that no mortgage or other lien on a homestead shall be valid except for the purchase money, any attempt to create a lien upon a homestead to secure a debt is void.
   [Ed. Note.—For other cases, see Homestead, Cent. Dig. § 176; Dec. Dig. ⟨⟩110.]

2. HOMESTEAD ⟨⟩214—LIEN—EVIDENCE.
   In a suit on notes executed and delivered by defendants, alleged to have been given in part payment for land conveyed to plaintiff and to foreclose a vendor's lien, and, in the alternative, for judgment for the land, evidence *held* to show that the defendants' conveyance of their homestead for a recited consideration equaling the amount of the indebtedness, which had previously been unsecured, and the defendants' reconveyance reciting the consideration of the notes, were intended to create a mortgage lien on the homestead.
   [Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 397–399; Dec. Dig. ⟨⟩214.]

3. APPEAL AND ERROR ⟨⟩1054(1)—REVERSAL —EVIDENCE—TRIAL BY COURT.
   In a trial before the court without a jury, the admission of incompetent evidence is no cause for reversal, where other testimony sustains the judgment upon the issue.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4185; Dec. Dig. ⟨⟩ 1054(1).]

4. CONTRACTS ⟨⟩164 — CONSTRUING INSTRUMENTS TOGETHER.
   Two or more writings, executed contemporaneously between the same parties and in reference to the same subject-matter, must be deemed one instrument and as forming but the same contract.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 746–748; Dec. Dig. ⟨⟩164.]

Appeal from District Court, Matagorda County; Saml. J. Styles, Judge.

Suit by Ed. Wadsworth, independent executor of the will of N. G. Floyd, deceased, against R. E. Powell and wife. Judgment for defendants, and plaintiff appeals. Affirmed.

Linn & Austin, of Bay City, for appellant. W. C. Carpenter, of Bay City, for appellees.

LANE, J. This suit was originally brought by Ed. Wadsworth, independent executor of the will of N. G. Floyd, deceased, on the 30th day of June, 1914, against R. E. Powell to recover upon six promissory notes, each for the sum of $199.93, alleged to have been executed and delivered by said Powell to said N. G. Floyd on the 3d day of January, 1898, in part payment for 75 acres of land situated in Matagorda county, Tex., conveyed by N. G. Floyd to R. E. Powell on the 3d day of January, 1898, due and payable to said Floyd on the 1st day of January, 1903, 1904, 1905, 1906, 1907, and 1908, respectively. A foreclosure of an alleged vendor's lien, retained by Floyd upon said land, was prayed for. Plaintiff also pleaded his superior title to said land and prayed that, in the event a recovery upon said notes for any cause was denied, he have judgment for said land. Isabella Powell, wife of R. E. Powell, was made a party defendant by the plaintiff after R. E. Powell had filed his original answer.

Defendant R. E. Powell and wife, Isabella, answered admitting the execution and delivery of said notes to Floyd by R. E. Powell, but, in defense of recovery upon said notes and the foreclosure of the lien upon the land prayed for by plaintiff, pleaded in substance that they, as husband and wife, constituted their family; that they purchased and became the owners of the said 75 acres of land in 1891; that immediately after such purchase they made the same their homestead; and that it has continued to be such homestead at all times from the date of such purchase up to the date of the trial of this cause. They further, in substance, allege: That, at the time said notes were executed and delivered to N. G. Floyd, R. E. Powell was indebted to said Floyd upon an open account in the sum of $1,413.44 and in the further sum of $585.55, represented by a certain note executed and delivered by said R. E. Powell to Howard F. Smith, which said note was on said 3d day of January, 1898, owned by N. G. Floyd; the two sums aggregating the sum of $1,999.30, which said indebtedness was wholly unsecured. That for the purpose of securing said indebtedness the said N. G. Floyd induced defendants to convey to him the said land and homestead

with the understanding and agreement that he (Floyd) would at once reconvey the same to them. That in pursuance of said agreement and understanding the said Floyd procured one G. R. Brown, his close friend and bookkeeper, who was also a notary public, to prepare the necessary papers to effectuate said agreement, and that said papers were so drawn by said Brown. That by this arrangement defendants did, on the 3d day of January, 1898, execute and deliver to N. G. Floyd their deed purporting to convey to said Floyd their said homestead for a recited consideration of $1,999.30 cash, but as a fact no cash consideration passed between said parties. That on the same day, in further pursuance of said agreement, N. G. Floyd reconveyed said homestead to defendants by deed reciting a consideration of ten notes executed by said R. E. Powell for the sum of $199.93 each, aggregating the sum of $1,999.30. That at said time it was the the understanding and agreement of all parties to said transaction that said papers so drawn, executed, and delivered were to constitute a lien only upon defendants' said home for the purpose of securing said indebtedness due by R. E. Powell to N. G. Floyd. Defendants further allege that they were illiterate negroes, unfamiliar with the forms and purport of legal documents, and, reposing full faith and confidence in the said Floyd and Brown, they executed the paper purporting to be a deed from them to said Floyd, conveying their said land to him, believing that same was a mortgage only to secure the two notes executed by R. E. Powell, in lieu of the original indebtedness of $1,999.30 due by him to said Floyd. Defendants also pleaded the four-year statute of limitation in bar of plaintiff's right to recover upon the notes sued upon.

Replying to defendants' answer, plaintiff denied all the defensive matter therein set up.

The cause was tried before the court without a jury, who, after hearing the evidence and argument of counsel, found all issues involved in favor of defendants, and rendered judgment accordingly decreeing the cancellation of said deed from R. E. Powell and wife to N. G. Floyd. From this judgment, plaintiff has appealed.

The petition of plaintiff, as well as the notes sued upon, show that said notes were barred by the four-year statute of limitation, pleaded by defendants, at the time this suit was filed; therefore, unless it be held that plaintiff held the superior title to said land involved in this suit, he cannot recover.

[1] The undisputed evidence shows that on the 3d day of January, 1898, the date of the two deeds, one from Powell and wife to Floyd, and the other a deed of reconveyance from Floyd to Powell of the land in question, said land was the homestead of Powell and wife. It follows, then, that any attempt to create a lien upon said land, no matter in what manner or form, to secure a debt, is void under the Constitution of this state. Article 16, § 50, Texas Const.; Sanger v. Brooks, 101 Tex. 115, 105 S. W. 37; Chamberlain v. Trammell, 61 Tex. Civ. App. 650, 131 S. W. 227; Loving v. Milliken, 59 Tex. 423; O'Shaughnessy v. Moore, 73 Tex. 108, 11 S. W. 153; Gray v. Shelby, 83 Tex. 405, 18 S. W. 809; Marx v. Baker, 10 Tex. Civ. App. 148, 29 S. W. 908.

[2] Hence, if the two deeds, the one from Powell and wife to Floyd, and the other from Floyd reconveying the same land to Powell and wife, both being executed on the same day, were executed for the purpose of fixing a lien upon said homestead land, the deed from Powell and wife was in its inception void and is still void and did not convey the title to said homestead property to Floyd, and Floyd never at any time owned the superior title to said property for which he sues.

In reaching a conclusion as to whether the deed from Powell and wife to Floyd, of date January 3, 1898, was in fact a deed or only intended as a mortgage, we will eliminate all the testimony of R. E. Powell and Isabella Powell with reference to transactions with or representations made by N. G. Floyd, deceased, concerning the said transactions between them, and will look to other facts and circumstances otherwise established.

As before stated, the undisputed evidence shows that the land in controversy was the homestead of Powell and wife on the 3d day of January, 1898, and had been such for many years prior thereto. The undisputed evidence also shows that on the 3d day of January, 1898, R. E. Powell was indebted to said N. G. Floyd in the sum of $1,999.30; that at said date R. E. Powell and wife, Isabella, executed and delivered to N. G. Floyd a deed by which they purported to convey to said Floyd the land in controversy, which said deed recites a consideration of $1,999.30, cash paid; that on the same day N. G. Floyd reconveyed the same land to R. E. Powell and wife and recited as the consideration the execution and delivery by R. E. Powell of ten promissory notes for the sum of $199.93 each, aggregating the sum of $1,999.30, one of which was to be paid on the 1st day of January, 1899, and one yearly thereafter until all were paid, a vendor's lien being retained on said land by Floyd to secure the payment of said notes; that no change in the possession of said land was made, R. E. Powell and wife remaining in possession thereof; that prior to these transactions the debt due by Powell to Floyd was wholly unsecured; and that no cash was paid to Powell and wife at the time said deed from them to Floyd was executed.

G. R. Brown, temporarily residing at Oklahoma City, testified, by deposition taken at the instance of the plaintiff, that he took the acknowledgments of R. E. Powell and Isa-

bella Powell to the deed of date January 3, 1898, by which they conveyed their homestead to N. G. Floyd; that at that time both of said parties knew full well the tenor and effect of the instrument they signed, because he had taken particular pains to fully explain to them the fact that by doing so they would lose their homestead in the event they failed to pay off the deferred payments on the place; that, at the time said deed was executed by Powell and wife, he (Brown) was a close friend of N. G. Floyd, was at his store one day every week, and posted his books for him; that he prepared some legal papers for Floyd, but was not his legal adviser; that he is not sure that he prepared all the papers inquired about, including notes and deeds inquired about relative to the conveyance mentioned, but his best recollection is that N. G. Floyd paid some money for Powell to Howard F. Smith, for some gin machinery purchased by Powell from Smith; that Floyd also furnished Powell with means, cash, and merchandise to run the gin and to carry on his farming operations; that when Powell and wife conveyed the land it was not as a lien to secure Floyd, but that Floyd again sold them the place with the understanding that he would give Powell all the time he wanted to pay for the place; that it is a fact that $1,999.30 was the exact and total amount due by Powell to Floyd when the transactions inquired about were had, but Powell did not agree to give the land as security for the debt, and he told Powell and his wife that they had their choice, to let the machinery go and hold their homestead, or if they sold the homestead and bought it back they might eventually lose it. He also testified, in answer to a question propounded to him by counsel for appellant, that the value of the land in controversy was $50 per acre, exclusive of the gin machinery; that he could not value the gin machinery and ginhouse without a personal inspection as he had not seen it since 1910.

[3] The undisputed evidence already stated forces us to the conclusion that the papers executed by the parties to the transaction of date January 3, 1898, were simultaneously executed; that they formed but one transaction, and were intended by all the parties thereto to operate as a mortgage only upon the land in question, and the sole and only purpose of all the parties was to secure Floyd in the payment of the debt due by Powell to him. Such being true, the evidence stated was amply sufficient to support the judgment rendered by the trial court, without the necessity of considering the testimony of R. E. Powell and Isabella Powell, objected to by appellant, and no other judgment could have been properly rendered. In a trial before the court without a jury, the admission of incompetent testimony is no cause for reversal, where other testimony sustains the judgment upon the issue. Beham v. Ghio, 75 Tex. 87, 12 S. W. 996; Haley v. Hail, 135 S. W. 663.

[4] It is a familiar principle that two or more writings, executed contemporaneously between the same parties and in reference to the same subject-matter, must be deemed one instrument and as forming but the same contract. Dunlap v. Wright, 11 Tex. 597, 62 Am. Dec. 506; Howard v. Davis, 6 Tex. 181.

In view of the fact that appellant makes the contention that Powell and wife intended to convey to Floyd an absolute title to their homestead by their deed of January 2, 1898, for the recited consideration of $1,999.30, and in view of his further contention that the testimony of Brown to the effect that the land in question was worth $3,750, exclusive of the ginhouse and machinery thereon, we think it appropriate to make these further observations:

Appellant's witness Brown testified that, before Powell and wife had executed the deed to Floyd, he (Brown) took particular pains to explain to them that they might lose their homestead in the event they failed to pay the deferred payments. The deferred payments referred to could, from the very nature of the transactions, have been no others than those to be created by a reconveyance of said homestead by Floyd to them in the event they should convey their said homestead under contemplated transaction, for there were no other deferred payments contemplated, so far as the record discloses, to which said statement could refer. It is thus made clear that it had been agreed between all the parties to said negotiations that Floyd in person or through Brown would reconvey said homestead to Powell and wife, before Powell and wife executed the deed to Floyd. It is also obvious that when counsel for appellant asked Brown to give the value of the homestead property of Powell and wife, and Brown in answer gave the value thereof as $3,750, exclusive of the ginhouse and machinery, such question and answer were to be, and were in fact, understood by both the questioner and witness to refer to the value as it related to the issue involved in the suit.

We have considered all of appellant's assignments, and what has been said disposes of all of them, and they are therefore overruled.

We find no such error in the trial of this cause as should cause a reversal of the judgment rendered by the trial court. Therefore said judgment is affirmed.

Affirmed.